**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTH1ERN DIVISION**

Melvin Thomas,

      Plaintiff,                                   Case No. 2:11-cv-12193

V                                              Hon. Paul D. Borman

Debbie Thomas,                           Mag. Mona K. Majzoub

      Defendant.

_____/


**REPORT AND RECOMMENDATION**

**I.**      **RECOMMENDATION:** The motion for summary judgment filed by Defendant
Debbie Thomas on March 19, 2012 should be **DENIED**.

**II.**      **REPORT**:

**A. Facts, Claims and Procedural History**

      Before the Court is Defendant Debbie Thomas's motion for summary judgment of Plaintiff
Melvin Thomas's *pro se* civil rights complaint. Plaintiff is a prisoner. Defendant is a food service
leader at the prison.

      Plaintiff alleges that Defendant intentionally filed a false major misconduct report for
"threatening behavior." (Dkt. 1, Compl. at 2). The major misconduct alleged that on July 25, 2012,
Plaintiff said, "somebody is going to die" if he had to work with an inmate named Marshall. *Id*. As
a result of the major misconduct, Plaintiff was placed in segregation for 10 days. *Id*

      In his amended complaint, Plaintiff alleges that the major misconduct was filed in retaliation
to Plaintiff's attempts to inform third shift officers that Defendant was providing them with poor

1

quality food. (Dkt. 5, Am.compl. at 2).

Plaintiff alleges that, on July 26, 2010 Defendant informed plaintiff that there would be a change to third shift officers' food. *Id.* Plaintiff claims he told Defendant that third shift officers had been complaining for weeks about the quality of their food, that the food substitute was inadequate, and that Defendant ordered him to serve the food anyway. Plaintiff states that upon hearing this, he said that he would serve the food, but he would tell third shift officers that Defendant ordered him to serve the food, after being told that it was "no good." *Id.*

Plaintiff claims Defendant replied, "I guarantee that you will never tell them anything." *Id.* Plaintiff states that a couple of hours later, before he was able to report to third shift officers, he was placed in segregation for the major misconduct. *Id.* Plaintiff alleges that the report was fabricated in order to keep him from talking to third shift officers. *Id.*

On August 4, 2010, Plaintiff had a hearing on the major misconduct. An administrative law judge reviewed the evidence, including video evidence, and concluded that the major misconduct was not supported. The charge was not upheld. *Id.* at 9.

Plaintiff filed a Prison Grievance Form. On the form, Plaintiff claimed the date of the incident was August 4, 2010. (Compl. at 7). Plaintiff dated the form August 10, 2010. *Id.* Prison officials marked the form received on September 1, 2010. *Id.*

The Step I grievance was rejected because it was filed late, and offered "...no reasonable circumstances beyond your control that would have prevented you from filing this grievance in a timely fashion,." *Id.* at 8.

Plaintiff filed a Step II appeal, claiming he mailed the grievance in a timely manner, and that the prison mail system was the reason for the delayed filing. *Id.* The Step II grievance was rejected

because, "A major misconduct report...may be written by any Department staff person..." *Id*. at 10.

Plaintiff filed a Step III appeal stating that the Step II rejection did not address the reason for delayed filing, or the issue of the Defendant intentionally filing a false major misconduct. The Step III appeal was rejected on two grounds. The reviewing officer concluded that the prisoner offered no valid reason for delay. The Step III appeal was also rejected because the officer found that prison policy does not allow grievances on issues related to a hearing process. Because Plaintiff had a hearing on the major misconduct, he was not allowed to file a grievance. *Id*. at 11.

Plaintiff filed a complaint alleging that he was deprived of liberty and property without due process. Plaintiff filed an amended complaint, in which he claimed that the major misconduct was filed in retaliation to Plaintiff's First Amendment right to criticize a public official. (Dkt. 9, November 11, 2011 Order granting recons. at 4). Plaintiff's complaint was dismissed. On motion for reconsideration, the Court held that Plaintiff could proceed on the retaliation claim. *Id.*

**B. Standard of Review**

**1. Rule 12(b)(6) motion to dismiss standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. See *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp*., 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of*

*Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

**2. Summary judgment standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the

4

district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly

support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other

materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric*

*Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must

determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587,

drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v.*

*Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**C. Analysis**

5

**1. Exhaustion.**

Before the Court is Defendant's motion for summary judgment. Defendant argues that because Plaintiff failed to file his Step I grievance on time, he failed to properly exhaust administrative remedies. (Dkt. 16, Def.'s mot. summ. j. ex. A at 3).

Under the Prison Litigation Reform Act of 1995 (PLRA), a prisoner cannot bring a suit under 42 U.S.C. § 1983 if he has not first exhausted administrative remedies. 42 U.S.C. § 1997e(a). In *Woodford v. Ngo*, the Supreme Court held that for purposes of the PLRA, exhaustion requires "proper exhaustion." 548 U.S. 81, 83 (2006). The Court ruled that proper exhaustion required compliance with deadlines, and other procedural rules, "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* At 91.

MDOC prison grievance process is governed by Policy Directive 03.02.120. The directive states that a grievance will be rejected if not filed in a timely manner, but it also states that a grievance will not be rejected if there is a valid reason for delay. (Def.'s Mot. Summ. J. at 3).

In *Surles v. Andison*, the Sixth Circuit addressed the issue of failure to exhaust. 678 F.3d 452, 455 (6th Cir. 2012). The Court noted that 'failure to exhaust' is an affirmative defense, and that the defendant bears the burden of proving that a plaintiff has failed to exhaust. In *Surles*, an inmate alleged that he did not file timely grievances because the defendants prevented him from doing so. The Sixth Circuit ruled that summary judgment was not appropriate unless the MDOC proved that interference by the defendants was not the reason for untimely delay. *Id.*

As in *Surles*, here, Plaintiff claimed that he mailed the grievance in a timely manner. (Compl. at 9). Defendant has neither offered evidence that the prison mail system was not the reason for

delay, nor evidence that an error in the mail system is not a valid excuse. *Id.* Defendant has therefore not proven that Plaintiff failed to exhaust administrative means.

Furthermore, the Step III rejection stated that, "A grievant cannot submit a Step I grievance on issues that are directly related to the hearings process. He  was given a hearing in accordance with the appropriate policy, thus, given an avenue of redress to the allegations. This is sound grounds for rejection." *Id.* at 11. Therefore, if Plaintiff was not entitled to the grievance process, then Defendant has offered no showing that Plaintiff failed to exhaust administrative remedies by going through the hearing process.

The Court therefore recommends rejecting Defendant's exhaustion argument and finding Summary Judgment not appropriate by this means.

## 2. Qualified Immunity

Defendant also argues that because she is a government official, who was acting within her official capacity, she is entitled to qualified immunity. (Def.'s Mot. Summ. J. at 14).

Qualified immunity shields public officials from civil liability, unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit ruled that the first step in analyzing qualified immunity in retaliation claims was to examine the retaliation claim. *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir. 1998).

> In order to prove retaliation, a plaintiff must establish the following elements: (1) that plaintiff was engaged in a Constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional right.

*Id.*

### a. Protected Conduct

The first element of a retaliation claim requires that the plaintiff be engaged in protected conduct. The court has ruled that there is a clearly established constitutional right to criticize a public officer acting his role as a public official. *Bloch*, 156 F.3d 673, 678. The court found that officers of the law can not use their official power in retaliation to criticism. *Id.* "[G]overnment officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely, anyone who takes an oath of office knows–or should know–that much." *Id.* (quoting *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)).

Here, Plaintiff alleges that he was criticizing a public officer for her official actions as Food Service Leader, and that she used her official power in retaliation. (Am. Compl. at 2). Defendant concedes that she is a state actor, who was acting in her official capacity at all relevant times. (Def.'s Mot. Summ. j. at 16). Defendant is therefore a public official, for purposes of the retaliation claim.

In *Pell v. Procunier*, the Supreme Court addressed the First Amendment rights of prisoners. 417 U.S. 817, 822 (1974). The Court found that lawful incarceration necessarily limits many rights, but prisoners retain, "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.*

Defendant has offered no showing that Plaintiff's right to tell third shift officers about Defendant's actions as Food Service Leader conflicted with a legitimate penological objective. Prison policy requires that inmates attempt to resolve issues with staff prior to filing a written

8

complaint. PD 03.02.130. Plaintiff claims that he was in the middle of a dispute between prison officers. On the one hand, Defendant ordered him to serve food, on the other hand, third shift officers, "can mess my life up." (Am. Compl. at 2). Plaintiff claims that he attempted to resolve his problems with the staff members involved, first with Defendant, and then with third shift officers.

That plaintiff had not yet criticized Defendant does not change the fact that he has a right to do so. *Carter v. Dolce* addressed a retaliation claim where the plaintiff threatened to file a grievance against a prison employee. 647 F. Supp. 2d 826 (E.D. Mich. 2009). There the court ruled that, "once a prisoner makes clear his intention to resort to official channels to seek remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right." *Id.* at 834.

Plaintiff argues that a false major misconduct was filed in retaliation for his clearly stated intent to inform third shift officers of Defendant's acts as Food Service Leader. There is a clearly established constitutional right to criticize public employees acting in their official capacities. This right is retained by prisoners, absent a showing that it interferes with a legitimate penological interest. Plaintiff's clearly expressed intent to act on this right amounts to protected conduct. Therefore, assuming Plaintiff's facts as true, he engaged in protected conduct.

### b. Adverse Action

The second element of a retaliation claim requires a showing of adverse action. *Thaddeus-X v. Blatter*, F.3d 378, 396 (6th Cir. 1999). The court found that adverse action in a retaliation claim is an action which would deter a person of ordinary firmness from engaging in protected conduct. *Id.* The court found that transfer to administrative segregation, "would certainly be adverse." *Id.*

9

The *Carter* court also addressed what constituted adverse action. 674 F. Supp. 2d 826, 834. The court found that, "charging an inmate with a major misconduct violation is sufficiently adverse to deter a person of ordinary firmness." *Id.*

Here, Plaintiff was charged with a major misconduct and placed in segregation. (Am. Compl. at 3). Plaintiff therefore meets the second element of the retaliation claim.

### c. Motivated in retaliation

The third element of a retaliation claim requires that the adverse action be motivated, at least in part, in retaliation for the plaintiff engaging in protected conduct. Plaintiff alleges that Defendant said, "I guarantee you that you will never tell them anything" upon hearing that Plaintiff intended to complain to third shift officers. *Id.* at 9. Plaintiff has also provided an affidavit from a prisoner who claims when he asked Defendant why Plaintiff was in "the hole," Defendant replied, "well...he won't be telling third shift anything about me." (Pl.'s Resp. Ex. B at 5).

In *Carter*, the court ruled that circumstantial evidence such as timing of events is appropriate evidence for intent in a retaliation case. 674 F Supp. 2d 826, at 835. In *Carter*, the plaintiff claimed he told an officer that he intended to file a grievance. Shortly after, the officer filed a major misconduct. The court ruled that temporal proximity, by itself, could be enough to create an inference of motivation. *Id.*

Plaintiff claims that he was taken to segregation for his major misconduct shortly after telling Defendant of his intent to talk to third shift officers. (Am. compl. 5 at 3). This can be enough to create "an inference of motivation."

In conclusion, assuming the truth of Plaintiff's allegations, Plaintiff has a viable retaliation

claim.

### d. Qualified Immunity

Once a retaliation claim is found to be viable, the next step is to consider the qualified immunity defense. *Bloch*, 156 F.3d at 682. When considering the qualified immunity defense in retaliation cases, the *Bloch* court looked at whether the constitutional right was clearly established, and then considered the retaliatory intent. *Id.*

The *Bloch* court ruled that the right to criticize a public official is a clearly established constitutional right, protected by the First Amendment. *Id.* The court ruled that this right was supported by ample case law, and held that, "it is well established that a public official's retaliation against an individual for his or her First Amendment rights is a violation of § 1983." *Id.* (quoting *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997).

The court ruled in the context of retaliation cases, the next consideration was retaliatory intent. *Id.* "The unlawful intent inherent in such a retaliatory action places it beyond the scope of a police officer's qualified immunity if the right retaliated against was clearly established." *Id.* (quoting *DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir. 1990)).

The court ruled that if it could be proved that the defendant released information in retaliation for the Blochs' criticism, then qualified immunity would not apply, because a reasonable officer would know that such action would violate their rights.

Similarly, here, Plaintiff alleges that Defendant filed a major misconduct in retaliation for Plaintiff's stated intent to criticize a public official for her professional performance. (Am. compl. at 3). The *Bloch* court found this to be a clearly established right. If Plaintiff can prove that

11

Defendant filed a false major misconduct in order to retaliate against Plaintiff for exercising this right, then the unlawful intent makes this action unreasonable. Therefore, qualified immunity does not shield Defendant.

**D. Conclusion**

An issue of material fact remains as to whether Plaintiff exhausted administrative ends. First, Defendants failed to provide evidence that the prison mail system was not the cause of Plaintiff's untimely grievance. Second, Defendant failed to provide evidence that Plaintiff did not exhaust administrative ends by going through the initial hearing process on the major misconduct.

If facts alleged by Plaintiff are assumed true, then there is an issue of material fact as to whether Defendant filed a major misconduct report in retaliation for Plaintiff's performance of protected conduct. If Plaintiff can prove this retaliatory intent, then qualified immunity does not shield Defendant.

The Court therefore recommends that summary judgment be **denied**.

**III.    Notice to Parties Regarding Objections**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v.*

*Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:  August 8, 2012                          s/ Mona K. Majzoub
                                                MONA K. MAJZOUB
                                                UNITED STATES MAGISTRATE JUDGE

13

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated:  August 8,2012                     <u>s/ Lisa C. Bartlett         </u>
                                          Case Manager