UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MELVIN THOMAS,**

    **Plaintiff,**     CIVIL ACTION NO. 11-12193

vs.     DISTRICT JUDGE PAUL D. BORMAN

    MAGISTRATE JUDGE MONA K. MAJZOUB

**DEBBIE THOMAS,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Melvin Thomas, currently a prisoner at the Michigan Reformatory in Ionia, Michigan, filed this action against Defendant Debbie Thomas, a Food Service Leader at the St. Louis Correctional Facility, alleging that she intentionally filed a false major-misconduct report against Plaintiff for "threatening behavior," which resulted in Plaintiff being placed in segregation for 10 days. (*See* docket nos. 1 and 5.) Plaintiff alleges that this false report was filed by Defendant in retaliation for Plaintiff's attempts to inform third-shift officers that Defendant was providing them with low-quality food. (*Id.*)

Before this Court is Plaintiff's Motion for Summary Judgment. (Docket no. 85.) Defendant filed a Response (docket no. 87), and Plaintiff filed a Reply (docket no. 88). All pretrial matters have been referred to the undersigned for consideration. (Docket no. 75.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.      Recommendation**

1

For the reasons discussed herein, the Court should deny Plaintiff's Motion for Summary Judgment [85].

## II. Report

### A. Factual Background

On July 26, 2010, while Plaintiff was incarcerated and working in the kitchen at the St. Louis Correctional Facility, Defendant filed a Major Misconduct Report (the "Ticket") against Plaintiff, alleging that at or about 6:00 p.m. on July 25, 2010, Plaintiff made a threatening statement with regard to another prisoner, Marshall. (*See* docket no. 85-3.) When Plaintiff arrived at work for the third shift, Marshall, a second-shift worker, was working overtime. In the Ticket, Defendant accused Plaintiff of asking "why is Marshall already here working?" (*Id.*) And when Defendant told Plaintiff that Marshall was working overtime, Plaintiff said "if Marshall is here doing 2nd shift work, then he should do all the 3rd shift work too, [because] if we have to work together, somebody is going to die." (*Id.*) As a result of the Ticket, Plaintiff spent ten days in segregation, until the time of his administrative hearing.

Plaintiff alleges that the conversation referred to by Defendant in the Ticket never took place; instead, Plaintiff contends, Defendant charged him with Major Misconduct because he threatened to report her to third-shift officers with regard to the quality of food coming from the kitchen. One of Plaintiff's responsibilities as a third-shift worker in the kitchen was serving meals to the third-shift officers. Plaintiff alleges that the third-shift officers had been complaining about the quality of food coming out of the kitchen and that on July 26, 2010, Defendant informed him that there would be a change in the food served to the officers. Plaintiff then told Defendant that the substitute was inadequate, but she told him to serve the food anyway.

2

And when Plaintiff told her that he was "going to tell them that I told you this food was no good, and you made me serve it anyway," Defendant said, "I guarantee you that you will never tell them anything!" (Docket no. 85-10.) Plaintiff alleges that two-and-a-half hours later, he was detained by officers based on the Ticket written by Defendant for conduct that allegedly occurred 24 hours earlier. (*Id.*)

As part of Plaintiff's administrative hearing related to the Ticket, Administrative Law Judge (ALJ) Wayne Groat reviewed "the misconduct report; a statement from prisoner to the investigator; a statement from prisoner Marshall; additional statements from the reporting staff member; and [a video of the events on July 25, 2010]." (Docket no. 85-8.) ALJ Groat found as follows:

> [The video] shows [Defendant] in the presence of several prisoner food service workers. It does not show her engaging in private conversation with any of them. It does not show any sign of personal interaction between her and any of the inmates. It appears that she is in the presence of at least three prisoner (sic) at all relevant times during this incident. Prisoner pleads not guilty. Prisoner states he never had any such conversation with [Defendant]. Prisoner states it doesn't take any special training to know the statement is a threat. If he made that statement he should never have been allowed to work with Marshall for the remainder of the shift. Based upon her description the alleged conversation was not one which could have been made in passing. The video doesn't show it because it never happened. Prisoner states he never made any threat. When asked, prisoner had no further comments.
>
> . . .
>
> Prisoner Thomas is charged with threatening behavior. Prisoner pleads not guilty based on his assertion he never made any threat. Prisoner states he never had any conversation with [Defendant]. The available video supports that assertion. The video does not support the report. The actions following the making of such a serious threat are illogical and inexplicable. If prisoner Thomas had threatened to kill prisoner Marshall there is no way that he should have been permitted to work a shift with prisoner Marshall. Prisoner Thomas presents as credible at this hearing. He has remained consistent throughout the investigation and the hearing process. The report is not supported by the evidence. The charge is not upheld.

(*Id.*) Neither Plaintiff nor Defendant exercised their right to appeal the decision. After the final determination by ALJ Groat, Plaintiff was released from segregation, but he lost his job in the kitchen. And his position was not reinstated because, even though he was found "not guilty," the prison determined that his "actions pose[d] a threat to the safety and security of the facility." (Docket no. 85-16.)

### B. Governing Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>> (1) give an opportunity to properly support or address the fact;
>>
>> (2) consider the fact undisputed for purposes of the motion;

>(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
>(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**C. Analysis**

As a preliminary matter, Plaintiff's motion turns, in part, on whether the Court gives preclusive effect to the ALJ's factual findings with regard to the Major Misconduct Ticket written against Plaintiff by Defendant. That is, if the Court adopts the ALJ's determination that the alleged conversation on July 25, 2010, between Plaintiff and Defendant "never happened," the proverbial dominos begin to fall in support of Plaintiff's Motion for Summary Judgment. If, however, the Court does not adopt the ALJ's findings, a question of material fact exists with regard to Plaintiff's claims.

The Sixth Circuit addressed the issue of collateral estoppel in a prisoner civil-rights context in *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), and *Robertson v. Torres*, 770 F.3d 398 (6th Cir. 2014). This Court recently discussed the applicable law with respect to issue preclusion in

the context of a prisoner civil-rights claim following *Robertson*:

> . . . Notably, "the party asserting preclusion bears the burden of proof." *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir.2004) (applying Michigan law); *see also U.S. v. Modanlo*, 493 B.R. 469 (D.Md.2013) (Under federal common law, the burden of making a showing on the elements of collateral estoppel is on the party seeking preclusion.), citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4421 (2d ed.2002); *In re Summerville*, 361 B.R. 133, 141 (B.A.P. 9th Cir.2007) ("Preclusion is an affirmative matter, and the proponent of preclusion has the burden of proof and bears the risk of non-persuasion."). . . . The *Robertson* Court first pointed to what the Supreme Court held in *University of Tennessee v. Elliott*, that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding . . . the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 [(1986)] (citations and quotation and alteration marks omitted). As observed in *Peterson*, *Elliott* identified "four criteria for, in the context of a § 1983 case, according preclusive effect to a state administrative agency's unreviewed factual determination." *Roberson*, 770 F.3d at 403, quoting *Peterson*, 714 F.3d at 912. In *Roberson*, the Court rejected the defendant's contention that Peterson provides a blanket rule that all findings of fact resulting from a Michigan prison misconduct hearing are conclusive:
>
>> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case. Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so-not just in theory, but in practice. *Id.* at 916-17. It likewise turns on the court's "sense of justice and equity," *Blonder–Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), which may require a case-by-case analysis of surrounding circumstances.
>
> 770 F.3d at 404–405.

. . .

The first *Elliott* factor requires that the state agency act in a judicial capacity. In *Peterson*, the Court held that Michigan major-misconduct hearings meet this requirement, since the hearing officer considers evidence from both parties, allows both parties to argue their versions of the facts at a formal hearing, and issues a written final decision that is subject to direct review in state court. *Roberson*, 770 F.3d at 403. The second factor asks whether the hearing officer "resolved a disputed issue of fact that was properly before [him]," and the court found that, in Peterson's case, the second factor was satisfied. *Id.*, at 404, quoting *Peterson*, 714 F.3d at 913 (quotation marks and alterations omitted). The third factor asks whether the party to be precluded had an "adequate opportunity to litigate" the factual dispute. *Id.* The *Peterson* court found that this factor was satisfied, given the "plethora of statutory protections" and ultimate right of appeal available to the prisoner. *Id.* The fourth and final factor "provides that if the prior three are satisfied, then we must give the agency's finding of fact the same preclusive effect it would be given in state courts." *Id.* As the *Peterson* court explained,

> The test Michigan courts apply when deciding whether to give preclusive effect to an agency's factual determination proceeds in two stages and tracks several of the *Elliott* factors. The first stage applies to all cases where preclusion is claimed, and asks whether: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. The next stage applies only to parties seeking to preclude litigation on a factual issue that was decided by an administrative agency. It asks whether: (1) the administrative decision was adjudicatory in nature; (2) there was a right to appeal from the decision; and (3) the legislature intended to make the decision final absent an appeal.

*Roberson*, 770 F.3d at 404, quoting *Peterson*, 714 F.3d at 914 (citations omitted). *Peterson* observed that some of the Michigan factors overlapped with the *Elliott* factors and were satisfied for the same reasons, such as the decision was adjudicatory in nature and there was a right to appeal. The court also found that there was mutuality of estoppel; that is, the parties to the misconduct hearing were the same as the parties to the litigation. Similarly, the court found that a question of fact essential to the judgment was actually litigated, since the charge was "submitted to the hearing officer for resolution, and it was resolved." *Id.* And it found that, "by statute, this resolution was a valid and final one." *Id.* . . . .

*Peterson* then addressed the final factor, whether the parties had a full and fair opportunity to litigate the issue. In *Peterson*, the court concluded that "Peterson had incentive to vigorously contest" the officer's account, in part because Peterson risked 30 days' detention, and that he did so, calling witnesses, submitting

7

affidavits, and moving to disqualify the hearing officer for bias. *Id.* at 915-16. As observed in *Roberson*, the court so concluded despite the fact that Peterson did not have access to counsel and was not allowed to view the videotape the incident, where the hearing officer did review the tape, which was withheld for security reasons, and "the hearing officer gave Peterson a detailed description of what the video depicted, down to the time-stamped second of each relevant recorded activity." *Id.* Because the Michigan courts' test was satisfied, the *Peterson* court accorded the hearing officer's factual determination preclusive effect. *Roberson*, 770 F.3d at 404, citing *Peterson*, 714 F.3d at 916.

*Tucker v. Pentrich*, No. 09-13246, 2015 WL 477200, at *8-10 (E.D. Mich. Feb. 3, 2015) (Edmunds, J.) As Plaintiff points out, there is no readily available precedent for the application of collateral estoppel in favor of the plaintiff in a prisoner civil-rights context. Likewise, however, there is no statutory law precluding such application, and neither *Roberson*, nor *Peterson* imply such a limitation. Thus, if the ALJ's factual findings in this matter meet the *Elliott* factors, the Court should give preclusive effect to his findings.

Like in *Peterson*, the ALJ's factual findings that the alleged conversation between Plaintiff and Defendant "never happened" and that the Ticket was not supported by the evidence meet the first three *Elliott* factors. In a major-misconduct hearing "the hearing officer considers evidence from both parties, allows both parties to argue their versions of the facts at a formal hearing, and issues a written final decision that is subject to direct review in state court." *Tucker*, 2015 WL 477200, at *9 (citing *Roberson*, 770 F.3d at 403.) The issue of whether the alleged threat ever happened was squarely before the ALJ. And, for the same reasons discussed in *Peterson*, the parties had an adequate opportunity to litigate the dispute. *Peterson*, 714 F.3d at 913. Likewise, with regard to the Michigan test for issue preclusion, as the *Roberson* and *Peterson* courts both noted, whether a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, whether there is mutuality of estoppel, whether the factual issue that

8

was decided by an administrative agency, whether the administrative decision was adjudicatory in nature, whether there was a right to appeal from the decision, and whether the legislature intended to make the decision final absent an appeal all track with the *Elliott* factors. *See Roberson*, 770 F.3d at 404; *Peterson*, 714 F.3d at 914.

The only outstanding question, then, is whether the parties had a full and fair opportunity to litigate the factual questions at issue, which is where Defendant's contention rests with regard to the preclusive effect of the ALJ's factual findings. Defendant first argues that under MDOC policy, only the Warden and the Prisoner may request a rehearing. (Docket no. 87 at 9-10 (citing docket no. 87-3).) But as Plaintiff points out, under Michigan law, "[a] rehearing may be held upon the request of a party or upon the department's own motion," regardless of an MDOC policy manual drafted in 1986. (Docket no. 88 at 2 (quoting MCL 791.254)); *see also* Majorie M. Van Ochten, *Prison Disciplinary Hearings: Enforcing the Rules Behind Bars*, Mich. B.J., FEBRUARY 1998, at 178, 181 ("*Staff also may request a rehearing*, although by policy the MDOC has required such requests to be submitted by a warden.") (emphasis added). Moreover, while Defendant asserts that she "was not aware if she could appeal a decision by the hearing officer and was never told she could do so," there is no evidence to suggest that she ever asked if she could. (Docket no. 87 at 4.) Defendant's lack of knowledge with regard to the appeals process does not render the process insufficient under *Elliott*, particularly where the ALJ noted that the "[e]vidence shall be retained pending [the] rehearing and appeal process." (*See* docket no. 85-8.)

Defendant primarily asserts, however, that she did not have a full and fair opportunity to litigate the matter because she "was not given an opportunity to view the video for the major misconduct hearing, nor was she present at the hearing to give testimony. . . . Furthermore, there is

9

no audio on the video footage, so there is no possibility for the hearing officer to have heard a threat made by Plaintiff." (Docket no. 87 at 10-11.) Thus, Defendant argues, "the hearing officer reached an incorrect finding."[1] (*Id.* at 10.)

Plaintiff contends that Defendant had an opportunity to view the video and an opportunity to testify at the hearing and simply chose not to do so. And although Defendant's brief states that she "was [not] allowed to view the video footage," her affidavit makes no such claim; instead, she states that "the hearing officer [did not] ask [her] to view any video footage."[2] (Docket no. 87 at 4.) Plaintiff further contends that in *Peterson*, the Sixth Circuit gave preclusive effect to the ALJ's findings against the prisoner where the prisoner did not even have an opportunity to view the video at issue. (Docket no. 88 at 5 (citing *Peterson*, 714 F.3d at 915-16.)

Plaintiff is correct with regard to the *Peterson* court's ruling, but the rationale underlying the ruling is more relevant. The *Peterson* court noted that even though Peterson had not been given an opportunity to view the video, his failure to raise that concern at an earlier proceeding was fatal:

> That said, Peterson did state some concerns to the agency about how the hearing actually proceeded (as opposed to how he was entitled by law to have it proceed), such as the alleged bias of the hearing officer, Peterson's inability to view the security tape, and the hearing officer's decision not to ask some of the questions that Peterson submitted. But this is not the forum in which to first bring those complaints to federal court. After his failed administrative appeal, Peterson was entitled to raise those concerns in an appeal to state court and, if the state courts had failed to resolve his concerns, to appeal to the U.S. Supreme Court. *See, e.g.,*

---

[1] Defendant's argument is, in a sense, an attempt to bootstrap the ALJ's findings with an evaluation of the evidence. That is, giving the ALJ's findings preclusive effect would be a meaningless exercise if the Court were first to determine whether the findings were "correct." Nevertheless, whether Defendant had a full and fair opportunity to litigate the matter still warrants discussion.

[2] Defendant's Affidavit was not attached to her Response, so the Court is only able to review the portions of her affidavit that are quoted in her brief. (*See* docket no. 87-2.)

> *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (resolving a dispute that started with a state prison agency's determination, was then appealed to state court, later decided by the state's highest court, and finally appealed to the U.S. Supreme Court). Indeed, had Peterson, for instance, thought the video recording dispositive, appealing to state court would have automatically made the video a part of the record. See Mich. Comp. Laws § 791.253(2). Nor can the results of his failure to use those procedures be considered proof that the procedures themselves were somehow inadequate. *See Herrera*, 680 F.3d at 550 (noting that a party's "failure to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy" (internal quotation marks and brackets omitted)).

*Peterson*, 714 F.3d at 916. Thus, the *Peterson* court's discussion of the video evidence is not dispositive.

In its discussion, however, the *Peterson* court noted that a central principle of a full and fair opportunity to litigate is "the courts' sense of justice and equity." *Id.* at 915 (internal quotations omitted). The court found it important that Peterson "had incentive to vigorously contest [the officer's] account, not least because losing the argument could mean, and did mean, thirty days of detention[; a]nd vigorously contest it he did." (*Id.*) In contrast, Defendant had no incentive to vigorously contest the ALJ's findings; that is, she had nothing to gain or lose. And like Peterson's vigorous challenge at all levels, Defendant's failure to contest the finding at any level is telling.

Even assuming, *arguendo*, that Plaintiff is correct and that Defendant could have viewed the video and could have testified at the hearing, giving preclusive effect to the ALJ's findings based solely on this opportunity would be neither just nor equitable. To the contrary, it would be inequitable to give preclusive effect to the ALJ's findings in this matter where Defendant had no incentive to contest the findings before Plaintiff filed his claims against her. *See Monat v. State Farm Ins. Co.*, 469 Mich. 679, 685 n.2 (2004) ("'Although an issue is actually litigated and determined by a valid and final judgment, relitigation of the issue in a subsequesnt action between

11

the parties is not precluded [where] . . . (5) . . . (b) . . . it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) . . . the party sought to be precluded, as a result of . . . special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.'" (quoting 1 Restatement Judgments, 2d, ch. 3, Former Adjudication, §§ 28-29)). Therefore, the ALJ's findings with regard to Plaintiff's ticket should not be given preclusive effect in this matter. And because the ALJ's findings should not be given preclusive effect, a question of fact remains with regard to the propriety of the Ticket and the underlying rationale for Defendant's actions. Plaintiff's Motion for Summary Judgment should be denied.

### D.     Conclusion

For the reasons stated above, the undersigned recommends that Plaintiff's Motion for Summary Judgment [85] be DENIED.

### III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: August 21, 2015      s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: August 21, 2015      s/ Lisa C. Bartlett
                             Case Manager

13