UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN THOMAS,                                     Case No. 11-12193

                                                        Paul D. Borman
            Plaintiff,                             United States District Judge

v.                                                 Mona K. Majzoub
                                                        United States Magistrate Judge

DEBBIE THOMAS,

            Defendant.
_____/

OPINION AND ORDER:
(1) DENYING PLAINTIFF'S OBJECTIONS (ECF NO. 91);
(2) ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION (ECF NO. 89);
AND (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF
NO. 85)

On August 21, 2015, Magistrate Judge Mona K. Majzoub issued a Report and Recommendation in favor of denying Plaintiff Melvin Thomas' Motion for Summary Judgment. (ECF No. 89, Report and Recommendation). Plaintiff filed a timely Objection to the Report and Recommendation dated September 3, 2015. (ECF No. 91.) Thereafter, Defendant Debbie Thomas filed a Response to Plaintiff's Objection. (ECF No. 92.)

This Court reviews *de novo* the portions of a report and recommendation to which objections have been filed. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). Having conducted a *de novo* review of the parts of the Magistrate Judge's Report and Recommendation to which valid objections have been filed pursuant to 28 U.S.C. § 636(b)(1) and as set forth below, the Court will adopt the Report and Recommendation, deny Plaintiff's objections, and

deny Plaintiff's motion for summary judgment.

## I. PERTINENT BACKGROUND

The Court finds that the facts in this action are accurately set forth in the Report and Recommendation and will adopt those facts here. (ECF No. 89, at 2-4.) In summary, on July 25, 2010, Plaintiff was incarcerated at the St. Louis Correctional Facility and worked in the prison kitchen. Defendant, a Food Service Leader at the prison, was Plaintiff's supervisor. That day, Defendant allegedly heard Plaintiff threaten the life of another prisoner, "Marshall," who also worked in the prison kitchen. Approximately 24 hours after hearing the threat, on July 26, 2010, Defendant filed a Major Misconduct Report ("Ticket") against Plaintiff. (ECF No. 85, Ex. 2, Ticket.) As a result of the Ticket, Plaintiff was detained by correctional officers and placed in solitary confinement for ten days.

Plaintiff claims that he never threatened anyone and that Defendant fabricated the threat as retaliation against him after Plaintiff threatened to report Defendant to third-shift officers regarding the quality of the food she was serving. (ECF No. 85, Ex. 9, M. Thomas Aff. ¶ 3.) After Plaintiff warned Defendant that he would be informing the officers that she had knowingly required him to serve food that was "no good," Defendant said "I guarantee you that you will never tell them anything!" (*Id.*) Some two hours after making that threat, Plaintiff was taken to solitary confinement. (*Id.* at ¶ 4.)

Pursuant to Mich. Comp. Laws § 791.252 and Plaintiff's request for an investigation, a hearing was held before an Administrative Law Judge ("ALJ") on August

4, 2010. (ECF No. 85, Ex. 7, Hearing Report) During the hearing, the ALJ examined the misconduct report, a statement from the Plaintiff, a statement for the prisoner who was allegedly threatened; a statement from Defendant, and a video of the events from July 25, 2010. (*Id.*) In his decision, the ALJ found:

> [The video] does not show any sign of personal interaction between her and any of the inmates. It appears that she is in the presence of at least three prisoner[s] at all relevant times during the incident . . . Prisoner states it doesn't take any special training to know the statement is a threat. If he made that statement he should never have been allowed to work with Marshall for the remainder of the shift. Based upon her description the alleged conversation was not one which could have been made in passing. The video doesn't show it because it never happened. Prisoner states he never made any threat.

(*Id.*)

The ALJ found Plaintiff "not guilty" of the allegations set forth in the Ticket and held:

> The video does not support the report. The actions following the making of such a serious threat are illogical and inexplicable. If prisoner Thomas had threatened to kill prisoner Marshall there is no way that he should have been permitted to work a shift with prisoner Marshall. Prisoner Thomas presents as credible at this hearing. He has remained consistent throughout the investigation and the hearing process. The report is not supported by the evidence. The charge is not upheld.

(*Id.*) Neither Plaintiff nor Defendant appealed the ALJ's decision.

After being found not guilty of the Ticket, Plaintiff was released from solitary confinement. However, Plaintiff's position in the kitchen was not reinstated because the prison determined that Plaintiff's action posed "a threat to the safety and security of the facility." (ECF No. 85, Ex. 15.)

3

## II. PROCEDURAL POSTURE

Previously, on September 24, 2012, this Court adopted the Magistrate Judge's Report and Recommendation that denied Defendant's motion for summary judgment. (ECF No. 32.) Thereafter, the Plaintiff was allowed to amend his complaint. (ECF No. 63.) On April 2, 2014, this Court ordered Plaintiff be assigned counsel. (ECF No. 74.) Under a final scheduling order, Plaintiff timely filed the current motion for summary judgment on March 5, 2015.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986).

Plaintiff moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. This rule provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving

party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Id.* at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## IV. ANALYSIS

Plaintiff argued in his motion for summary judgment that the ALJ's factual finding that the conversation and/or threat "never happened" must be given preclusive effect and relied upon *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013). (ECF No. 85, at 17; Ex. 7.) Plaintiff reasoned that if the ALJ had already determined that the threat "never happened," Plaintiff had established his *prima facie* case of First Amendment retaliation and summary judgment was appropriate because Defendant could not show that she would have written the Ticket absent Plaintiff's protected conduct.

In *Peterson*, the Sixth Circuit held that the factual findings in a major-misconduct hearing were entitled to preclusive effect and could be used against a prisoner plaintiff in

his later filed § 1983 litigation.[1] The Sixth Circuit explained that pursuant to *University of Tennessee v. Elliott*, there are "four criteria for, in the context of a § 1983 case, according preclusive effect to a state administrative agency's unreviewed factual determination." *Peterson*, 714 F.3d at 912. The *Elliott* criteria are: (1) that the state agency acted in a "judicial capacity"; (2) the hearing resolved a disputed issue of fact that was property before it; (3) the party to be precluded had "an adequate opportunity to litigate" the factual dispute; and (4) if the first three factors are satisfied then the court "must give the agency's finding of fact the same preclusive effect it would be given in state courts." *Id*. at 912-13 (citation omitted). The Sixth Circuit also explained Michigan's test for determining whether to give preclusive effect to an agency's factual findings, stating that Michigan's test proceeds in two parts and "tracks" some of the *Elliott* factors:

> The first stage applies to all cases where preclusion is claimed, and asks whether: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. The next stage applies only to parties seeking to preclude litigation on a factual issue that was decided by an administrative agency. It asks whether: (1) the administrative decision was adjudicatory in nature; (2) there was a right to appeal from the decision; and (3) the legislature intended to make the decision final absent appeal.

*Id*. at 914 (citations omitted).

---

[1] It is undisputed that there is currently no precedent for giving preclusive effect to findings of fact in favor of a prisoner in this context (i.e., where a prisoner seeks to use the facts offensively). However, as the Magistrate Judge accurately noted, there is no case law that precludes such an application, nor does *Peterson* limit its holding in such a fashion. (ECF No. 89, at 8.)

7

In the present case the Magistrate Judge examined these factors and concluded that the ALJ's factual findings met the first three *Elliott* factors. Neither party objected to this conclusion. Accordingly, the findings were entitled to the same preclusive effect it would be given under Michigan law.

The Magistrate Judge next found that all of the Michigan factors were met, save one: whether the party to be precluded had a "full and fair opportunity to litigate the issue. (ECF No. 89, at 11.) The Magistrate Judge noted that unlike the prisoner in *Peterson*, who had an incentive to vigorously contest the officer's account because he faced thirty days of detention, the Defendant in the present action did not have such an incentive. (*Id.*) Based on that fact, and the fact that a central principle of a full and fair opportunity to litigate is the courts' sense of justice and equity, the Magistrate Judge recommended that the ALJ's factual findings could not be given preclusive effect because to allow issue preclusion in this context would be inequitable.

Plaintiff now makes two objections to the Magistrate Judge's Report and Recommendation. First, Plaintiff argues that the Magistrate Judge erroneously required Plaintiff to meet a new burden based on a misreading of *dicta* in the *Peterson* decision, and second, that Defendant did in fact have an incentive to vigorously contest the ALJ's factual findings.

As to the first issue, the Court finds that Plaintiff has misconstrued the Magistrate Judge's analysis. Plaintiff asserts that the genesis of the Magistrate Judge's "brand new burden" was based on a misreading of *Peterson*. However, the Court finds that the

8

Magistrate Judge did not create a new burden nor pluck that burden from thin air. *Peterson* provides that Michigan courts ask whether the party to be precluded "received a 'full and fair opportunity to litigate' his factual findings. In assessing this question, they weigh thirteen factors while recognizing that ultimately, the answer rests on the courts' sense of justice and equity." *Peterson*, 714 F.3d at 914-15 (internal marks omitted, citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 683 n. 2 (2004)). In *Peterson*, the Sixth Circuit did not specifically enumerate these thirteen factors, nor analyze each separately, rather, the Sixth Circuit summarily noted that "[a]lmost all of the thirteen factors clearly either weigh in favor of a full-and-fair finding or are simply irrelevant to this case." *Id.* at 915. The *Peterson* court then went to on to examine whether "justice and equity" were served by allowing preclusion and found that there was no inequity, in part because the prisoner plaintiff had possessed a great incentive to "vigorously" contest the factual findings during the major misconduct hearing. *Id.*

In the present action, as noted by the Magistrate Judge, not all of the thirteen factors used by Michigan courts weighed in favor of finding a preclusive effect. Specifically, one factor weighed against such a finding:

> (5) There is a clear and convincing need for a new determination of the issue ... (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Monat*, 469 Mich. at 683 n. 2. The Magistrate Judge found that Defendant, who is not a

prisoner and therefore did not face any immediate consequence from the resolution of the Major Misconduct Hearing, had no incentive to show up to the hearing and contest the evidence or to appeal the ALJ's factual findings.

Given this background, Plaintiff's argument that the Magistrate Judge misread *Peterson* must be rejected, because the "new burden" is not new, but rather one of the many factors to be weighed as required by Michigan law and referenced by *Peterson*. Further, such a finding is supported by the Sixth Circuit's more recent decision, *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014). In *Roberson*, the Sixth Circuit clarified that "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id.*, at 404. Significantly, the Sixth Circuit explained:

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and *whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so – not just in theory, but in practice*. [*Peterson*, 714 F.3d] at 916-17. It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404 (emphasis added). In the instant case, the Defendant did not possess any incentive to "vigorously" contest the ALJ's findings at the hearing or on appeal. Additionally, it is arguable that Defendant may not have foreseen that these factual issues would arise in this later proceeding. These facts make it inequitable to preclude Defendant from contesting the ALJ's factual findings. Accordingly, the Court denies

Plaintiff's first objection.[2]

Plaintiff's second objection is that Defendant did, in fact, have a reason to vigorously litigate the facts in the major misconduct hearing because a fear that Plaintiff would follow through on his death threat against Marshall, and/or because a finding of not guilty would negatively impact Defendant's employment. The Court agrees with the Magistrate Judge that Defendant did not have a personal incentive to vigorously contest the factual findings at the hearing or in an appeal: the resolution of the major-misconduct hearing would not have positively or negatively affected Defendant. Indeed, the ALJ's decision posed very real and immediate consequences for Plaintiff because he faced the loss of his job, time in segregation and other severe consequences, however, that same decision did not directly implicate any of Defendant's interests. Therefore, Defendant was in an inherently different position than Plaintiff regarding her motivation (or lack thereof) to contest or litigate the facts at the major-misconduct hearing. Further, while Plaintiff is correct that a determination that Defendant purposefully fabricated the Ticket might possibly result in an investigation that could impact Defendant's employment, such

---

[2] The Court notes that Defendant references, the Plaintiff acknowledges, and the Magistrate Judge relied upon Defendant's affidavit in support of her response to Plaintiff's motion for summary judgment. Defendant, however, failed to attach her affidavit to her response and only attached a "placed holder." (ECF No. 87, Ex. A.) Defendant has not supplemented the record with her affidavit in the nine months since she filed her Response. As it stands, there is no affidavit in the record upon which this Court (or Defendant) can rely. Significantly, the Court is unable to determine if the affidavit that Defendant and the Magistrate Judge quote from is a sworn statement as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(e).
   Despite this fact, the Court finds the Magistrate Judge's legal conclusion regarding the preclusive effect of the ALJ's factual findings is without error because such a conclusion is independent of the assertions contained in Defendant's affidavit.

an inquiry would have been separate from the major-misconduct hearing.[3] Accordingly, the Court denies Plaintiff's second objection.

## V. CONCLUSION

For all these reasons the Court DENIES Plaintiff's Objections (ECF No. 91), ADOPTS the Magistrate Judge's Report and Recommendation (ECF No. 89) and DENIES Plaintiff's Motion for Summary Judgment (ECF No. 85).

IT IS SO ORDERED.

                                                s/Paul D. Borman
                                                PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE

Dated: January 13, 2016

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 13, 2016.

                                                s/Deborah Tofil
                                                Case Manager

---

[3] The Court further notes that despite the ALJ's factual finding that the conversation "never happened," Plaintiff has not identified any consequence that Defendant actually suffered from that decision.